UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESTINIE WILLIS,<br><br>          Plaintiff,<br><br>     v.<br><br>XEROX BUSINESS SERVICES, LLC;<br>XEROX EDUCATION SOLUTIONS, LLC;<br>and DOES 1 through 20,<br><br>          Defendants. | Case No.: 1:13-cv-01353 - LJO - JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND THIS MATTER TO THE KERN COUNTY SUPERIOR COURT<br><br>(Doc. 9) |

Plaintiff Destinie Willis ("Plaintiff") seeks a remand of this action to Kern County Superior Court. (Doc. 9). Defendants Xerox Business Services, LLC and Xerox Education Solutions, LLC ("Xerox" or "Defendants") filed their opposition to the motion on October 25, 2013 (Doc. 13), to which Plaintiff filed a reply on November 1, 2013. (Doc. 14). On November 8, 2013, the Court heard the oral arguments of the parties. For the following reasons, Plaintiff's motion to remand is **GRANTED**.

I.      **Factual and Procedural History**

Plaintiff initiated this action by filing a Summons and Complaint in Kern County Superior Court on July 10, 2013. (Doc. 2-1, Exh. 1). She filed a First Amended Complaint in the state court on August 14, 2003. (Doc. 2-1, Exh. 3). Plaintiff alleges she is a former employee of Xerox for unlawful wage and hour policies, and she seeks to bring the action on behalf of herself and all others similarly situated, including those "who are or were employed by Defendant Xerox Business, Defendant Xerox

1

Education and/or any Doe Defendant to work as a phone representative, or equivalent function, in a California Office at any time from July 10, 2009 through the date of trial of this action and who were not salaried employees." (Doc. 2-1 at 24 ¶¶ 1-2). Specifically, Plaintiff raises the following causes of action against Defendants: (1) violations of California Labor Code §§ 221, 222, 223, 1194 and Wage Order No. 4 (failure to pay minimum wage); (2) violations of California Labor Code §§ 510, 558 and 1194 (failure to pay proper overtime); (3) violations of California Labor Code § 204 and applicable wage orders (failure to timely pay all wages earned); (4) violations of California Labor Code § 226 (failure to provide accurate itemized wage statements); (5) violations of California Labor Code § 203 (failure to timely pay final wages); (6) violation of California Business & Professions Code §§17200, *et seq* (unfair competition/unfair business practices); and a violation of the Private Attorneys General Act. (*See id.* at 33-38, ¶¶ 32-74).

On August 23, 2013, Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332(a), asserting the Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332(a). (Doc. 2 at 3). Plaintiff filed the motion to remand now pending before the Court on September 9, 2013. (Doc. 9).

## II.     Removal Jurisdiction

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. *Id.* at § 1446(b). Removal statutes are to be strictly construed, *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego Abrego v. Dow*

*Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute"). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

Recently, the Ninth Circuit determined "the proper burden of proof imposed upon a defendant to establish the amount in controversy requirement is the preponderance of the evidence standard." *Rodriguez v. AT&T Mobility Service*, 728 F.3d 975, 976 (2013). This standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional threshold]." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008) (quoting *Sanchez v. Mon. Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (emphasis omitted). Thus, Defendants have the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $75,000 for Plaintiff's claims.

### III.     Defendants' Calculations in the Notice of Removal

In the Notice of Removal, Defendants contend the Court has diversity jurisdiction because the parties are diverse "and good faith reading of the Complaint shows that the amount in controversy attributable to the named Plaintiff clearly exceeds the sum of $75,000, exclusive of interest and costs." (Doc. 2 at 3). According to Defendants, their "good faith estimate of the amount in controversy" totals $**85,883**, which includes back pay damages of $35,100; penalties in the amount of $14,083; equitable relief and restitution valued at $11,700; and attorney fees totalling $25,000. (*Id.* at 8).

Explaining these numbers, Defendants observe that "Plaintiff seeks up to three years of alleged unpaid wages and overtime pay, penalties under at least three California statutes, equitable relief, restitution for a fourth year of alleged unpaid wages and overtime pay, and statutory attorney's fees." (Doc. 2 at 4). According to Defendants, there were "78 applicable pay periods during the three-year limitations period." (*Id.* at 5). Defendants contend: "[E]ven if the Plaintiff claims she is entitled to only fifteen hours in a week in wages, over three years and at an average overtime rate of $15 per hour, her back pay damages alone exceed $35,100." (*Id.*) Also, Defendants assert the penalties in issue "could total as much as $14,083" because Plaintiff seeks (1) penalties for failure to pay wages up to thirty days, totalling $2,333; (2) overtime penalties for "every one of the 78 applicable pay periods,"

which totals $7,750; and (3) "penalties up to $4,000 for failure to provide semimonthly statements of hours worked under Cal. Labor Code Section 226." (*Id.* at 5-6).

In addition, Defendants observe that "the Court must consider the value of the equitable relief the Plaintiff seeks." (Doc. 2 at 6) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *Jackson v. American Bar Ass'n*, 538 F.2d 829, 831 (9th Cir. 1976). Defendants assert "Plaintiff seeks to enjoin the Defendants' method for paying its California employees, and to obtain restitution for herself of all wages she is allegedly owed over the four years preceding the filing of the Complaint." (*Id.*) Calculating the amount of damages for this claim, Defendants explain:

> [W]hile the Plaintiff's claim for restitution cannot result in a double recovery for wages owed in the three years preceding the filing of the Complaint…, this claim can permit Plaintiff to be awarded restitution for an additional year of allegedly owed wages. Accordingly, even if the Plaintiff claims she is entitled to a total of fifteen hours a week in wages regarding her restitution claim under Section 17200, over one year at an average overtime rate of $15 per hour, the amount in controversy for this claim is at least $11,700 on behalf of the named Plaintiff alone.

(*Id.*)

Finally, Defendants note attorney fees are included in the calculations to determine the Court's jurisdiction where, as here, an underlying statute authorizes an award of attorney's fees. (Doc. 2 at 6) (citing *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007)). Defendants estimate Plaintiff's counsel will spend "a minimum of 300 hours of work," which includes 100 hours of discovery, 40 hours for dispositive motions, 100 hours for trial preparation and pre-trial motions, and 60 hours for trial. (*Id.* at 7). Defendants assume a rate of $500.00, asserting this amount "is reasonable given that a court in the Central District of California recently awarded Los Angeles-based employment law attorneys an amount in a factually analogous case." (*Id.*) (citing *Drenckhahn v. Costco Wholesale Corp.*, No. 2:08-CV-1408-JHN-SS (C.D. Cal. May 4, 2012)). Therefore, Defendants estimate fees for the class "will amount to a minimum of $150,000." (*Id.*) Also, Defendants estimate counsel will spend "at least 50 separate hours to litigate" Plaintiff's claim for a violation of California Business and Professions Code § 17200, resulting "in an attorney fee award of $25,000 or more." (*Id.*)

Defendants conclude that "[w]hen the potential compensatory damages, penalties, value of equitable relief and restitution, and attorney's fees attributable to the named Plaintiff are included, there can be no dispute that the amount in controversy in this matter meets the jurisdictional threshold of

$75,000." (Doc. 2 at 8). Thus, Defendants assert the Court has jurisdiction over the matter because the named plaintiff satisfies the amount-in-controversy requirement and supplemental jurisdiction may be taken over the claims of the putative class members. (*Id.* at 8, n.14) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

### IV. Motion to Remand

Plaintiff contends the Defendants failed to carry their burden to show the amount in controversy exceeds $75,000. (Doc. 9 at 8). According to Plaintiff, "four of the five dollar amounts utilized by Defendants are grossly exaggerated as a result of fundamentally erroneous assumptions." *Id.* at 9. Plaintiff argues that "[w]hen the actual facts and applicable law are used, the amount in controversy is $26,927.60"—which includes $18,525.00 in back pay damages; $7,402.60 in penalties; $1,000 in attorney fees (apportioned to class members); and no restitution. (*Id.*)

Plaintiff asserts that she worked for Xerox from December 19, 2011 to January 19, 2013. (Doc. 9-4, Willis Decl. ¶ 2). However, Defendants' calculations were based upon "the assumption that Plaintiff worked for Defendants for at least three years." (Doc. 9 at 9) (citing Doc. 2 at 6). Therefore, Plaintiff argues Defendants' calculations must be reduced to 19 months of employment rather than a 36-month period, or to 41 of the 79 pay periods. (*Id.*) With these reductions, Defendants calculations for back-pay damages would be reduced from $35,100 to $18,525 and the penalties would be reduced from $14,083 to $7,402.60. (*Id.*) In addition, Plaintiff asserts Defendants erroneously assume that she "worked for Defendants more than three years prior to the filing of the Complaint." (*Id.* at 10). Because she did not do so, Plaintiff contends the amount for restitution should not be considered. (*Id.*)

Further, Plaintiff argues that "Defendants are incorrect in assuming that, for purposes of determining the amount in controversy with respect to the named plaintiff, attorneys' fees sought pursuant to California Code of Civil Procedure section 1021.5 are not allocated among all class members." (Doc. 9 at 10). By dividing the fees estimated by Defendants to a class of 400 (because Defendants assert this case is similar to a class action involving 404 class members), Plaintiff contends the fees that may be apportioned to her for jurisdictional purposes, of less than $1,000. (*Id.* at 8, 11).

Based upon these changes to Defendants' calculations, Plaintiff argues Defendants "failed to carry their burden of proving that the amount in controversy, exclusive of interest and costs, exceeds

$75,000." (Doc. 9 at 12). Therefore, Plaintiff concludes the Court should remand the matter to Kern County Superior Court. (*Id.*)

### V.     Defendants' Recalculations

Defendants contend the calculations made in the Notice of Removal were based upon Plaintiff's original complaint (Doc. 13 at 6, 8), although her First Amended Complaint was filed prior to removal of the action and was referenced in the Notice of Removal. Therefore, opposing Plaintiff's motion to remand, Defendants assert they recalculated the amount in controversy based upon the allegations of the First Amended Complaint[1], and because Defendants determined Plaintiff "worked for and received 44 pay checks during her employment." (*Id.* at 8, 9). With the recalculations, Defendants assert the amount in controversy includes $19,800 in back-pay damages; $82,400.00 in PAGA penalties; $5,050.00 in penalties for the failure to provide accurate itemized wage statements and failure to timely pay final wages; $11,700.00 for equitable relief; $21,862.50 in attorneys' fees for class claims; and $25,000.00 in attorneys' fees for Plaintiff's individual claim, for a total of $165,812.50. (*Id.* at 10-12).

### VI.    Discussion and Analysis

As an initial matter, Plaintiff argues Defendants should not be permitted to recalculate the amount in controversy. (Doc. 14 a 12). According to Plaintiff, the opposition to remand "does not 'supplement' the Notice of Removal—it improperly seeks to contradict and replace it completely." (*Id.*) (citing *Bicek v. C & S Wholesale Grocers, Inc.*, 2013 WL 4009239, *4 (E.D. Cal. Aug. 5, 2013)). In *Bicek*, the Court determined that when the defendants did not seek to change the grounds for removal— including diversity jurisdiction and the Class Action Fairness Act—but rather presented "facts that support[ed] these bases for jurisdiction" in their opposition to remand, such supplementation of the Notice of Removal was permitted. *Bicek*, 2013 WL 4009239, at *5. Similarly, here Defendants seek to provide additional support for their assertion that the Court has diversity jurisdiction over the matter. Therefore, the recalculations are permissible and will be considered by the Court.

Nevertheless, the Court cannot base its jurisdiction upon "speculation and conjecture" of the

---

[1] Plaintiff filed a Second Amended Complaint in this Court on September 26, 2013 (Doc. 11), after seeking a remand of the action. However, because jurisdiction is determined at the time of removal, the operative complaint for purposes of determining the amount in controversy is the First Amended Complaint filed in the state court prior to removal.

parties. *Lowdermilk*, 479 F.3d at 1002. As explained by the Ninth Circuit, "[c]onclusory allegations as to the amount in controversy are insufficient." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003). Defendants must set forth facts to support the assertion that the amount in controversy exceeds the statutory minimum. *Gaus*, 980 F.2d at 567. The Court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of the removal," including declarations and affidavits. *Matheson,* 319 F.3d at 1090 (citation omitted).

### A. Back-pay damages

In the Notice of Removal, Defendants assert, without any evidentiary support, that "Plaintiff earned approximately $28,000 per year during her employment." (Doc. 2 at 5). Specifically, Jaime Son, Vice President of Human Resources of Xerox Business Services. Defendants assume "an average overtime rate of $15 hour." (Doc. 2 at 5; Doc. 13 at 20). In addition, Defendants assume, without explaining why, that Plaintiff *could* claim she is "entitled to… 15 hours a week in wages." (*Id.*) Based upon these assumptions, Defendants contend the amount in controversy for back-pay totals $19,800. (Doc. 13 at 20).

Notably, although Defendants contend Plaintiff "has not disputed she is seeking a minimum 15 hours of overtime per week," the burden does not lie with Plaintiff upon removal. Rather, Defendants must provide some factual support for their calculations. *See Garibay v. Archstone Communities LLC*, — F.3d —, 2013 WL 4517934 (9th Cir. Aug. 27, 2013) (finding there was insufficient information to support a finding that the amount in controversy requirement was satisfied where "the defendants rely on speculative and self-serving assumptions about key unknown variables"). Here, Defendants have not explained why it is proper to assume Plaintiff seeks 15 hours a week in overtime and admitted at the hearing it was simple guesswork; this is insufficient.

### B. PAGA Penalties

Defendants contend Plaintiff's claim for PAGA penalties places $82,400.00 in controversy. (Doc. 13 at 10). Defendants observe PAGA penalties are subject to a one-year statute of limitations, and that "[t]here were 27 pay periods in the one-year period preceding the July 10, 2013 filing of Plaintiff's original complaint and the date of Plaintiff's termination on July 19, 2013." (*Id.* at 13) (citing Cal. Civ. Proc. Code §340(a); *Baas v. Dollar Tree Stores*, 2009 WL 1765759, at *5 (N.D. Cal. June 18,

2009). Plaintiff alleges that she is entitled to recover penalties PAGA penalties pursuant to Cal. Labor Code §§ 210, 226.3, 558, 1174.5, and 2698. (*See* Doc. 2-1 at 38-39; Doc. 13 at 13-14). However, according to Plaintiff, the amount calculated by Defendants is inflated because they assume Defendants would have to pay the heightened penalty for "subsequent violations" and includes the amount which would be paid to the state. (Doc. 14 at 16). The first amended complaint asserts the right to recover the civil penalty "per initial violation" and a higher amount "for each subsequent violation." (Doc. 13-1 at 36, 37)  The phrase "subsequent violation" is a term of art.

For a plaintiff to recover for a "subsequent violation," an employer must have notice that it has violated the Labor Code. *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1207-09 (2008); *see also Amalgamated Transit Union Local 1309 v. Laidlaw Transit Service, Inc.*, 2009 WL 2448430, at *9 (S.D. Cal. Aug.10, 2009) ("Under California law, courts have held that employers are not subject to heightened penalties for subsequent violations unless and until a court or commissioner notifies the employer that it is in violation of the Labor Code").

### 1.     Penalties for "subsequent violations"

Calculating the amount in controversy for Plaintiff's PAGA claim, Defendants allocate 1 of Plaintiff's pay periods from July 10, 2013 through July 19, 2013 for an initial violation, and the remaining 26 pay periods for the heightened rate of "subsequent violations." For example, for the violation of Cal. Labor Code § 210, Defendants find $5,300 is in controversy (1 x $100 initial violation + 26 $200 subsequent violations) and $26,250 for claims under § 226.3 (1 x $250 initial violation + 26 x $1,000 subsequent violations). (Doc. 13 at 13-14). However, at the same time, "Defendants dispute that Plaintiff is entitled to recover subsequent violation penalties." (*Id.* at 13, n.11).

In *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1121-22 (9th Cir. 2013), the Court held,

> Where, as here, "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 699 (9th Cir.2007), the "removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold, *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.1996).

As noted above, in the First Amended Complaint, Plaintiff did not allege a factual basis for the claim that subsequent violation-penalties may be imposed  (Doc. 13-1 at 36; Doc. 13 at 13, n. 11). Moreover,

Defendant does not proffer any reason to believe that subsequent violation-penalties may be imposed. To the contrary, seemingly, Defendant disputes that they can be imposed. (Doc. 13 at 13). Defendants assert, "Defendants dispute that Plaintiff is entitled to recover subsequent violation penalties until Defendants are put on notice of Labor Code violations "from either a commissioner or court." [Citation] Here, neither the Labor Commissioner nor any court is alleged to have put Defendants on notice of Labor Code violations." *Id.*

In *Allen v. Utiliquest, LLC*, 2013 WL 4033673 at *8, n. 9 (N.D. Cal. Aug. 1, 2013), the court rejected that subsequent violation penalties could be assumed when determining the amount in controversy where there was no evidence the defendant had notice of Labor Code violations before or during the PAGA period. The Court noted, "Defendant's PAGA penalties calculation is also insufficient because it assumes an initial pay period violation and fifty-six subsequent violations for each of the 306 putative class members that worked during the PAGA statutory period. Courts have held that 'subsequent' violations in the PAGA context means not just later in time but following notice to the employer that it is in violation of the Labor Code." *Allen* relied on *Trang v. Turbine Engine Components Technologies Corp*., 2012 WL 6618854 at *5 (C.D. Cal. Dec. 19, 2012) which held,

> From the parties' papers, it is unclear if or when TECT was put on notice that it was in violation of the Labor Code. **Since TECT carries the burden of proof and has provided no evidence about when it was notified of any alleged violations, the court finds any heightened penalties unreasonable.**
>
> TECT additionally argues that Plaintiff's FAC put the heightened penalties for subsequent violations in controversy simply by quoting the applicable PAGA statute. (Opp'n at 14:18–21; Reply at 7:21–24.) **TECT, however, cannot meet its burden of proving an amount in controversy by referring only to the statute; it must point to evidence making it more likely than not that a certain amount in controversy is met. Here, there is not sufficient evidence offered to establish heightened penalties for this cause of action.**

*Id.,* emphasis added. There was a similar result in *Jimenez v. Menzies Aviation, Inc.,* 2013 WL 1411228 at * 4 (N.D. Cal. Apr. 8, 2013) where the court held,

> The complaint does not allege that Defendants were put on notice that they were in violation of the Labor Code prior to Plaintiff's termination. Nor have Defendants provided evidence indicating that they were notified of Labor Code violations prior to Plaintiff's termination. Accordingly, because Defendants have failed to demonstrate that it is more likely than not that Plaintiff's claims for PAGA penalties for the Labor Code violations alleged in claims one, three, and five of the complaint are worth $21,900, the Court cannot credit Defendants damages calculation in this regard.

Finally, in *Velasquez v. HMS Host USA, Inc.*, 2012 WL 6049608 at *9 (E.D. Cal. Dec. 5, 2012), this Court refused to consider subsequent violation penalties, which were unsupported by a sufficient evidentiary basis, when evaluating the amount-in-controversy and held, "Defendants again offer no evidence to support their assertion that each putative class member is entitled to maximum penalties under PAGA."

Because there is insufficient evidence to support that subsequent violation penalties are in controversy, the Court agrees the penalties must be recalculated to consider only amounts associated with initial violations, which includes $100 per pay period under Cal. Labor Code §210 (equalling $2,700); $250 per pay period under Cal. Labor Code §226.3 (equalling $6,750); $50 per pay period under Cal. Labor Code §558 (equalling $1,350), and $100 per pay period x 9 for each alleged violation under Cal. Labor Code §2699(f) (equalling $24,300). Thus, the total amount of these penalties is $35,100.

### 2. Money paid to the state

"The traditional rule is that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement." *Urbino*, 726 F.3d at 1122. Whether a claim is separate and distinct depends on whether "neither [party] can enforce [the claim] in the absence of the other." *Troy Bank of Troy, Ind. v. G.A. Whitehead & Co.*, 222 U.S. 39, 41. (1911).

The Court notes Defendant does not assert that all of the civil penalties that may be imposed as to all of the aggrieved employees' should be considered in determining whether Plaintiff has placed at least $75,000 in controversy. Indeed, in *Urbino*, 726 F.3d at 1122-1123, the Ninth Circuit laid this question to rest and held that the interest of the LWDA cannot be considered in determining whether a plaintiff has demonstrated that the amount in controversy exceeds $75,000. The Court held,

> Defendants contend however that the interest Urbino asserts is not his individual interest but rather the state's collective interest in enforcing its labor laws through PAGA. See, e.g., *Arias*, 95 Cal.Rptr.3d 588, 209 P.3d at 934; *Amalgamated Transit Union, Local 1756, AFL–CIO v. Super. Ct.*, 46 Cal.4th 993, 95 Cal.Rptr.3d 605, 209 P.3d 937, 943 (2009). Accordingly, they argue this is effectively a "case[ ] in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant," *Snyder*, 394 U.S. at 335, 89 S.Ct. 1053, and that those claims can be combined to satisfy the minimum amount in controversy requirement of the diversity statute, *id.* To the extent Plaintiff can—and does—assert anything but his individual interest, however, we are unpersuaded that such a suit, the primary benefit of which

> will inure to the state, satisfies the requirements of federal diversity jurisdiction. The state, as the real party in interest, is not a "citizen" for diversity purposes.

Thus, the Court finds no logical support that Defendant, while precluded from relying upon the total amounts awardable under PAGA when evaluating the amount in controversy, may rely upon the 75% of the total amount payable to the LWDA, to demonstrate the $75,000 threshold. *See Main v. Dolgen California, LLC*, 2013 WL 5799019 at *2-3 (E.D. Cal. Oct. 28, 2013)[2]. Notably, even before *Urbino*, this Court held in *Pulera v. F & B, Inc.*, 2008 WL 3863489, at *4 (E.D. Cal. Aug. 19, 2008), that "[th]e amounts recoverable by Plaintiff based on his PAGA claims are separate and distinct from the amounts recoverable by the State of California via the LWDA, and therefore these amounts may not be aggregated." Likewise, previously this Court explained, "According to PAGA, a successful aggrieved employee who sues for civil damages must give 75% of the award to the California Labor and Workforce Development Agency, and may keep only 25%." *Lopez v. Source Interlink Companies, Inc.*, 2012 WL 1131543, *3 (E.D. Cal. Mar 29, 2012) (citing Cal. Labor Code § 2699(h)(i)). "The 75% awarded to the state is not considered to be an amount in controversy for jurisdictional purposes." *Id.*

Contrary to this, Defendant relies upon *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650 (E.D. Cal. July 14, 2010). However, in light of *Urbino*, the Court declines to follow *Schiller* and disagrees with its suggestion that there should not be the 75% reduction in the amount recoverable for purposes of determining jurisdiction.

With the reductions made above which rejected the claim for subsequent-violation penalties, the PAGA penalties totalled $35,100. However, because 75% of this amount would be paid to the California Labor and Workforce Development Agency, the amount placed in controversy by Plaintiff's PAGA claims equals $8,775.

**C.     Other Penalties**

Plaintiff seeks penalties for failure to provide itemized wage statements and failure to provide final wages within the statutory due date, which are violations of Cal. Labor Code §§ 203 and 226.

---

[2] Though *Main* considered the entirety of the PAGA for all employees minus the 75% payable to the state to determine whether jurisdiction existed, this occurred because under CAFA, courts are required to consider the amount in controversy as to the entire described class.

(Doc. 2-1 at 34-36). Defendants assert that these claims place $5,050.00 in controversy, which includes $2,400 under §203 and $2,650 under §226. (Doc. 13 at 15-16). Notably, however, Defendants again calculate the penalties under Cal. Labor Code § 226 as including heightened penalties for "subsequent violations." (*See* Doc. 13 at 16). As set forth above, there are no facts to support the imposition of heightened penalties. Consequently, the amount must be reduced to the penalty applicable to an initial violation ($50 rather than $100), which reduces the total in controversy for these claims to $3,750.

### D. Equitable relief

Plaintiff seeks "restitution of wages earned by Representative Plaintiff and other Class Members under California's Unfair Competition Law." (Doc. 2-1 at 32, ¶ 31). In addition, she "seeks injunctive relief prohibiting Defendants from engaging in the complained-of illegal labor acts and practices in the future." (*Id.* at 32-33). With her claim for a violation of Cal. Business & Prof. Code § 17200, et seq., Plaintiff "seeks equitable and statutory relief to stop Defendants' misconduct… and to obtain restitution to herself and other Class Members of all wages retained…within the four years preceding the filing of this Complaint." (*Id.* at 37, ¶ 63).

Defendants assert: "while the Plaintiff's claim for restitution cannot result in a double recovery for wages owed in the three years preceding the filing of the Complaint (those compensatory damages are computed above), this claim can permit Plaintiff to be awarded restitution for an additional year of allegedly owed wages." (Doc. 2 at 6). Therefore, in their papers, Defendants contended that "the amount in controversy for this claim is at least $11,700 on behalf of the named Plaintiff alone." (*Id.*) Plaintiff argues this amount should not be considered in controversy because it "is based on the erroneous assumption that [she] worked for Defendants more than three years prior to the filing of the Complaint," and she did not do so. (Doc. 9 at 10). Responding to this assertion, Defendants contend it was "reasonable" to "estimate that Plaintiff's claim for injunctive relief is equivalent to one year of Plaintiff's allegedly owed overtime wages." (Doc. 13 at 17). As Plaintiff notes, she was not employed by Xerox for four years prior to the filing of the Complaint, and it is unclear why Defendants believe Plaintiff may be rewarded *restitution* for a year when she did not work. Notably, at the hearing, Defendants conceded that there was no factual support for this estimate.

Because the value assigned by Defendants to Plaintiff's claim for equitable relief is purely

speculative, the $11,700 is not considered by the Court in its determination of whether the amount in controversy requirement is satisfied. *See Fletcher v. Toro Co.*, 2009 WL 8405058, at *9 (S.D. Cal. Feb. 3, 2009) (observing the defendant failed to "provide any evidence upon which the Court could estimate damages" associated with Plaintiff's claim for equitable relief, and declining to speculate as to any amount for purposes of determining its jurisdiction).

### E. Attorneys' fees

As Defendants observe, the Ninth Circuit has determined that "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

#### 1. Class claims

According to Defendants, a good faith estimate of Plaintiff's attorneys' fee award for the class claims would be "25 percent of her class damages," equalling $21,862.50. (Doc. 13 at 18) (citing *Morganstein v. Esber*, 768 F.Supp. 725, 727 (C.D. Cal. 1991) (awarding 25 percent of the settlement amount to class counsel as fees). Defendants arrived at this amount "by adding the potential damages attributable individually to her" including the PAGA penalties as well as penalties for violations of Cal. Labor Code §§ 203 and 226. (*Id.* at 18, n. 20). However, as discussed above, the potential penalties were reduced from the amount identified by Defendants ($87,450) to a total of $38,850. Consequently, adopting Defendants' claim that a good faith estimate of Plaintiff's fee award is 25 percent of the penalties, Plaintiff's attorneys' fees for the class claims amount to $9,712.50.

#### 2. Claim for a violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

Defendants contend attorney fees for Plaintiff's claim for unfair competition should be separated from the claims she states on behalf of the class. (Doc. 2 at 7; Doc.13 at 18). Defendants assert "the named Plaintiff seeks an award of fees solely on behalf of herself, and not on behalf of her herself and the putative class…in relation to her unfair competition claim brought pursuant to California Business and Professions Code § 17200." (Doc. 2 at 7). According to Defendants, "[t]his claim will likely require at least 50 separate hours to litigate, as the facts and law needed to establish such a claim are distinct from the facts and law required to establish the remainder of Plaintiff's claims,

and thus will require separate and additional discovery and trial preparation and work on the part of both the Plaintiff and the Defendants." (*Id.*) At the rate of $500 per hour, Defendants assert "this claim could result in an attorney fee award of $25,000 or more solely on behalf of the named Plaintiff." (*Id.*)

On the other hand, Plaintiff argues the Ninth Circuit has "explicitly rejected the argument Defendants make here" by holding that under Section 1021.5 "attorneys' fees are not awarded solely to the named plaintiffs in a class action, and that they therefore cannot be allocated solely to those plaintiffs for purposes of amount in controversy." (Doc. 9 at 10) (quoting *Gibson v. Chrysler Corp.*, 261 F.3d 927, 942-43 (9th Cir. 2001)). In *Gibson*, the defendant opposed remand, arguing "the district court should attribute the § 1021.5 attorney's fees only to the named plaintiffs." *Gibson*, 261 F.3d at 942. The Court disagreed, because "Section 1021.5 states only that attorneys' fees go 'to a successful party.'" *Id.* Because Plaintiff seeks to recover attorneys' fees pursuant to Cal. Code Civ. P. § 1021.5 (*see* Doc. 2-1 at 33, ¶ 31), Plaintiff contends the fees for a violation of Cal. Bus. & Prof. Code § 17200 should be allocated to the class, with only portion of the estimated $25,000 allocated to her for purposes of jurisdiction. As Plaintiff notes, the First Amended Complaint provides "Plaintiff *and the Plaintiff Class* are also entitled to recover costs and attorneys' fees pursuant to statute" in relation to a violation of California's Unfair Competition Law. (*Id.*) (emphasis added).

The court is not persuaded by this argument[3] but, significantly, even if the full estimate of $25,000 was allocated to Plaintiff for purposes of determining this Court's jurisdiction, Defendants have not demonstrated the amount in controversy requirement is satisfied.

## IV.     Conclusion and Order

Defendants have failed to carry the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy for Plaintiff's claims exceeds $75,000. Moreover, e*ven if* the Court included Defendants' unsupported calculations for back pay damages and allocated $25,000 in attorney fees for Plaintiff's claim for a violation of California's Unfair Competition Law and included $9,712.50 for Plaintiff's share of attorneys' fees for the class claims, the total amount in controversy would still fall short of the jurisdictional minimum.

---

[3] Likewise, there is no support for the claim that $500 per hour is a reasonable hourly rate in the Eastern District of California. *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011).

Therefore, the Court cannot find it has diversity jurisdiction over this action. However, as the Ninth Circuit explained in *Garibay*, if Defendants "later discover[] evidence that the jurisdictional bar is met, it may once again attempt to remove this case to federal court." *Garibay*, 2013 WL 4517934 at *2 (citing *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121 (9th Cir. 2013)).

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion to remand is **GRANTED**;
2. This matter is **REMANDED** to Kern County Superior Court; and
3. The Clerk of Court is **DIRECTED** to close this matter, because this Order terminates the action in its entirety.

IT IS SO ORDERED.

Dated:   **November 14, 2013**          /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE